UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **NICOLE HUBBARD**, | ) | Case No. 1:06 CV 00596 |
| | ) | |
| Petitioner, | ) | Judge Dan Aaron Polster |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **PATRICIA ANDREWS**, | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Petitioner Nicole Hubbard is a prisoner in state custody following multiple convictions in July 2003, for complicity in the murder of Omar Clark, complicity for kidnapping, felonious assault and complicity for felonious assault.  See *State v. Hubbard*, 2004 WL 2340159, 2004 - Ohio - 5204 (Ohio App. 8 Dist.).  Hubbard was sentenced to 17 years to life, and exercised a direct appeal from these convictions unsuccessfully.  *Hubbard, supra,* appeal not allowed, 105  Ohio St.3d 1464, 824 N.E.2d 92, 2005 - Ohio - 1024 (Table 2005).  She now comes before the federal district court seeking collateral review under 28 U.S.C. §2254 raising six grounds for relief in her counseled application.  It appears to the undersigned that Hubbard has exhausted her state remedies with respect to these grounds.

*Ground One:*

> The evidence provided by a witness who lacks first-hand knowledge as to events he described should be excluded on defense's motion.

Hubbard states that this first ground presents a challenge to statements from a witness, Clark Lamar, whom she argues was permitted to testify contrary to Ohio Evid. R. 602.  This rule disallows testimony, "unless evidence is introduced sufficient to support a finding that [the witness] has

1:06 CV 0596                                             2

personal knowledge of the matter." The topic of Mr. Lamar's testimony at issue was the death of

Omar Clark. The state court found that the witness' testimony was based on his personal

knowledge, reasoning:

> Here, Lamar testified that he saw two individuals pull up and exit the car. He
> testified that he saw Sailor with a gun. He testified that once he saw the gun,
> he took off running. He testified that within seconds of running, he heard
> gunshots. Although Lamar did not see the actual shooting, he clearly had
> personal knowledge of the facts of the case and could testify to what he
> actually saw and heard on the night of the shooting. Accordingly, the trial
> court did not err in failing to strike his testimony based upon lack of personal
> knowledge.

*Hubbard*, 2004 WL 2340159 at ¶7. The state appellate court citing *Bonacorsi v. Wheeling & Lake*

*Ry. Co.*, 95 Ohio St.3d 314, 767 N.Ed.2d 702, 2002 - Ohio - 2220 (2002), explained, [a]n individual

has personal knowledge of a matter when the knowledge is gained through first hand observation

or experience and the witness had an opportunity to perceive and actually perceive the subject matter

of his testimony." *Hubbard*, at ¶6. Respondent contends that the federal review of this first ground

is unavailable because it was not presented to the state courts as a constitutional question.


The general rule is that a claim, which is based solely on an error of state law, is not

redressable through federal habeas procedure. *Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998),

*cert. denied*, 525 U.S. 935 (1998), citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Hutchinson*

*v. Marshall*, 744 F.2d 44, 46-47 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985). However, a

violation of a state evidentiary rule may rise to a level of denial of fundamental fairness, hence a

denial of due process. See *Fry v. Pliler*, - U.S. -, 127 S.Ct. 2321, 2324, 168 L.Ed.2d 16 (2007);

1:06 CV 0596 3

*Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); and see  *Brown v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999); *Cooper v. Sowders*, 837 F.3d 284, 287 (6th Cir. 1988).


Obviously, the state decision contained no consideration of the federal constitutional claim and respondent explains that this was due to Hubbard's failure to "fairly present" this argument as a constitutional claim.  The substance of the federal claims submitted for habeas corpus review must be "fairly presented" to the state's highest court because only in this manner will the state courts have been provided with a fair opportunity to pass upon and correct alleged violations of federal rights. See  *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982);  *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Duncan v. Henry*, 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865, 868 (1995); *Baldwin v. Reese*, 541 U.S. 27, 32-34, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). "A claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts." *Jacobs. v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).


Whether a petitioner has "fairly presented" the same claim in the state courts is determined by whether petitioner can show:

> (1) reliance upon federal cases employing constitutional analysis;
> (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right;  or
> (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987), *cert denied*, 532 U.S. 958 (2001).

1:06 CV 0596                                          4

The facts do not fit within the mainstream of constitutional law, though.  The personal knowledge requirement in Evid. R. 602 is "a 'most pervasive manifestation' of the common law insistence upon 'the most reliable source of information.'" *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 590 n. 9, 113 S.Ct. 2786, 2795 n. 9, 125 L.Ed.2d 469 (1993). It, however, is not an expression of recognized constitutional principle.  The undersigned has reviewed Hubbard's state briefs and found no argument raising  any claim except  that the witness' testimony was admitted contrary to Ohio Evid. R. 602. Consequently no federal constitutional claim was "fairly presented."

Hubbard's fallback position is that her ground asserts a denial of fundamental fairness, an exception to the general rule.  However, other than this naked claim, Hubbard does not demonstrate that the admission of this testimony unfairly impaired her ability to present a defense or infringed on a constitutional right.

Failure to fairly present the federal ground to the state's highest court constitutes a procedural default or waiver barring federal habeas corpus review. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48, 119 S.Ct. 1728, 1732-34, 144 L.Ed.2d 1 (1999)("Whether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has *properly* presented his claims to the state courts. Because we answer this question "no," we conclude that Boerckel has procedurally defaulted his claims."); *Teague v. Lane*, 489 U.S. 288, 297-99, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (14th amendment equal protection claim is forfeited following

1:06 CV 0596                                            5

exhaustion of state remedies and failure to raise claim to state courts); and  see  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 2557 n.1, 115 L.Ed.2d 640 (1991).[1]  The fair presentation principle further applies not only to those situations where the petitioner has failed to raise his claim to the state's highest court for review, but also where it has been presented, "in such a manner that the state court could not, consistent with its own procedural rules, have entertained it."  *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000).


This procedural default serves to protect the integrity of the federal exhaustion rule "by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state court's having had the opportunity to correct the constitutional violation in the first instance." *O'Sullivan*, 526 U.S. at 844, 119 S.Ct. at 1732; see also *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); and *Edwards v. Carpenter*, 529 U.S. 446, 452-53, 120 S.Ct. 1587, 1592, 146 L.Ed.2d 518 (2000) (discussing the "inseparability" and "interplay" of the exhaustion rule and the procedural-fault doctrine in giving state courts a fair opportunity to pass upon petitioner's claims).

---

[1]  When state court decision does not clearly and expressly rely on independent and adequate state ground, the federal court may  address petition.  " This rule does not apply if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.  In such a case there is a procedural default for purposes of habeas corpus. . ."
*Coleman v. Thompson*, 501 U.S. at 735 n.1, 111 S.Ct. at 2557 n.1.

1:06 CV 0596                                    6

Not only is review barred by the federal doctrine as expressed in *O'Sullivan, Teague* and *Edwards*, but it is also a state procedural bar and the failure to present the ground to the state's highest court provides an adequate and independent state procedural rule to bar habeas review.  See *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied,* 546 U.S.821 (2005).

In this situation, federal collateral review is barred, but Hubbard  may overcome this bar by a  demonstration of "cause" and "prejudice" to excuse the failure to present a constitutional claim to the state's highest court, or alternatively by showing actual innocence.  See *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 102 S.Ct.1587, 1590-92, 146 L.Ed2d 518 (2000); *House v. Bell*, -U.S.-, 126 S.Ct. 2064, 2076, 165 L.Ed.1 (2006); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1971). Hubbard does not argue cause or prejudice. Further, actual innocence means "factual innocence not mere legal insufficiency." *Bousley v. U.S.*, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

Hubbard has not, however,  produced new evidence of innocence as required.  See *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  The central theme to her argument is that if she did have intent, the object of this intent was Clark Lamar, not Omar Clark. This argument runs counter to Ohio's doctrine of transferred intent, and certainly fails to demonstrate actual innocence.  As a result, the procedural default for failure to "fairly present" a federal constitutional claim has not been overcome.

*Ground Two:*

1:06 CV 0596                                    7

> Petitioner was denied due process when the trial court reserved a ruling on
> the motion for judgment of acquittal made under favor of Rule 29(A).

Hubbard argues that she was denied due process when the trial court deferred ruling on her motion for acquittal.  Respondent counters that this ground and the first ground is noncognizable, referring again to *Norris v. Schotten, supra.* The undersigned finds that there is no "clearly established Federal law as determined by the Supreme Court of the United States" to govern this ground.

Ohio Crim. R. 29(A)  reads:

> (A) *Motion for judgment of acquittal*
>
> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.  *The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.*  (emphasis supplied).

There clearly was a procedural error on the part of the trial court by reserving ruling on the motion for acquittal made at the close of the state's case.  However, Hubbard fails to show how this produced a violation of due process.  Her argument to the Ohio Supreme Court was that, "[g]iven the verdicts finding Nicole Hubbard not guilty on a number of counts, it is at least arguable that the trial judge, for sure, should have advised Nicole Hubbard and her counsel, that those charges and perhaps several others, as well, should have been eliminated. . ."  (Memorandum in support of

1:06 CV 0596                                              8

jurisdiction, 2004 WL 530252 at 5).    Hubbard has a valid grievance, but this grievance does not rise to a constitutional infringement.

The state appellate court found that the reservation of ruling was an implied denial,  and more importantly, the state court was compelled to address the sufficiency of the evidence supporting the charges on which Hubbard stood convicted to evaluate whether the error was harmless.  See *Hubbard*,  ¶¶10, 16-43.[2]  This state decision was not "contrary to" or an "unreasonable application" of "clearly established Federal law, as determined by the Supreme Court of the United States."

Federal habeas is "an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. U.S.*, 523 U.S. 614, 621, 118 S.Ct.1604, 140 L.Ed.2d 828 (1998), quoting *Reed v. Farley*, 592 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994).  For purposes of federal collateral review, all claims adjudicated on their merits by state courts are governed by 28 U.S.C. §2254(d)(1) and (2).  A district court has very restricted Congressionally granted powers for review under 28 U.S.C. §2254(d).  See *Williams v. Taylor*, 529 U.S. 362, 402-03, 117 S.Ct. 1495, 146 L.Ed.2d 389 (2000)*; Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002). The extent of permissible federal review of state convictions is limited as follows:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to

---

[2] The undersigned notes that the reservation of ruling did not result in Hubbard waiving a fundamental right as compelling her to take the stand in her own defense thus waiving her Fifth Amendment right to silence.

any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim  - - -

(1) resulted in a decision that was *contrary to*, or involved an *unreasonable
application* of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination
of the facts in light of the evidence presented in the State court proceeding
(emphasis supplied).

The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the

U.S. Supreme Court at the time of the relevant state court decision.  *Lockyer v. Andrade*, 538 U.S.

63, 71-71, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Williams v. Taylor*, 529 U.S. at 412; *Bell*

*v. Cone*, 535 U.S. at 698.


Ohio's Crim R. 29(A) is not unique and a similar rule was addressed in *Smith v.*

*Massachusetts*, 543 U.S. 462, 466 n. 2, 125 S.Ct. 1129, 1133 n. 2, 160 L.Ed.2d 914 (2005).  The

issue in *Smith*, though, concerned the double jeopardy implications from a partial grant of a motion

to acquit.  Similarly, the Supreme Court had earlier discussed Rule 29 again in light of its double

jeopardy implications. See *Price v. Vincent*, 538 U.S. 634, 643 n. 2, 123 S.Ct. 1848, 1854 n. 2, 155

L.Ed.2d 877 (2003).  There is no  "clearly established Federal law according to the Supreme Court

of the United States" topically related to Hubbard's second ground.


The Sixth Circuit has adjudicated an erroneous reservation of a ruling on a Rule 29 motion

in *U.S. v. Hebeka*, where the court engaged in harmless error analysis finding that at the close of the

government's case there was sufficient evidence to permit submission of the matter to the jury.  *Id.,*

1:06 CV 0596                                          10

25 F.3d at 287, 292 (6th Cir. 1994).  Harmless error analysis has also been utilized in state decisions

confronting this error.  *E.g. State v. Cayse*, 1999 WL 2437 (Ohio App. 4 Dist.);  *In re S.C. 2004 WL*

*2445334*, 2004 - Ohio - 5800 (Ohio App. 2 Dist.); *State v. Shepherd*, 1989 WL 142380 (Ohio App.

8 Dist.).  Likewise, the state appellate court decision in issue engaged in harmless error analysis.

While the second ground cannot be adjudicated for lack of a constitutional standard,  at least it can

be said that Hubbard gained the advantage of compelling the state court to address the sufficiency

of the evidence.


*Ground Three:*

> The petitioner was entitled to an instruction that specifically
> addressed the testimony of drug addicts.


Hubbard states that the two critical state's witnesses, Clark Lamar and Ellen Taylor both

testified that they were drug addicts.   Hubbard's requested instruction required the jury to examine

these witnesses' testimony "with greater scrutiny than the testimony of any other witness" and that

their testimony, "may be less believable because of the effect of drugs."  See Appellate Brief Ex-1,

Ex 28, TR. 1786-1787.


Respondent again argues that the state court's refusal to give the requested instructions was

not presented as a constitutional claim to the state courts and thus was not "fairly presented."

Respondent's argument is certainly compelling.  Hubbard had argued to the Ohio Supreme Court

that drug addicted witnesses should be relegated to a "special status," a status not shared by other

witnesses.  See Memorandum in Support of Jurisdiction, 2004 WL 5303252 at 6.

1:06 CV 0596                                        11

In any event, federal collateral review is unavailable again because there is no "clearly established Federal law" governing this claim.   On the appellate level, the Sixth Circuit in *Scott v. Mitchell*, 209 F.3d 854, 882-883 (6th Cir. 2000), adopted the Fourth Circuit's approach from *U.S. v. Howard*, 590 F.2d 564, 570 (4th Cir. 1979), that there was no error in rejecting an added instruction because there is no evidence that the witness was addicted at the time of trial.[3]   The Sixth Circuit had previously found in *U.S. v. Griffin*, 382 F.2d 823 (6th Cir. 1967), that a special cautionary instruction was necessary for a narcotics addict because, "[a]bsent the testimony of the [narcotics] addict, this record is devoid of any evidence that Miss Lewis and the defendant Griffin formed a common plan or design to engage in a criminal partnership."  *Id.*, 382 F.2d at 826. Nonetheless there is no clearly established Federal law for the state decision to be "contrary to" or an "unreasonable application."[4]

*Ground Four:*

> The verdict finding the petitioner guilty of complicity in the commission of a felony-murder charge cannot survive meaningful scrutiny where there is a lack of proof, the petitioner was a party to any intent by anyone to kidnap, or to feloniously assault the decedent and where there is a lack of proof the decedent was in fact kidnapped or assaulted.

---

[3] Hubbard speculates that the witnesses were addicted when they testified (Traverse at 3).  This issue was not resolved in the state courts, but since it fails to rise to an error of clearly established federal law, no evidentiary hearing will be required.

[4] The disparity in federal appellate court views on whether or when such an instruction is warranted is evidenced in the notes following a sample jury instruction on drug or alcohol abuser credibility.  See 1A O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, §15.05 (5th ed.).

1:06 CV 0596                              12

*Ground Five:*

> The verdict finding the petitioner guilty of "complicity in the commission of
> kidnapping" Omar Clark and Clark Lamar were not supported by evidence
> sufficient to justify findings of guilt beyond a reasonable doubt.

Hubbard contends that even assuming she was actually a party to Cordell Hubbard's actions

directed toward Clark Lamar, this fact cannot support the required conclusion that the death of Omar

Clark was a foreseeable happening.  This contention by petitioner becomes a bit absurd given that

the state appellate court did construe these grounds as challenging the sufficiency of the evidence

and addressed these grounds referencing *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096

(1997), a decision applying the Supreme Court's due process standard applicable to sufficiency of

evidence from *Jackson v. Virginia*, 493 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  See

*Hubbard* at ¶19.  Respondent maintains that the fourth and fifth grounds were defaulted and waived

for not being "fairly presented" as federal questions.


Due Process under the Fourteenth Amendment to the  Constitution prohibits a conviction of

any person except upon proof of guilt beyond a reasonable doubt.  *In re Winship*, 397 U.S. 358, 362-

63, 90 S. Ct. 1068, 1071-72,  25 L.Ed.2d 368 (l970).  Application of this due process principle in

habeas corpus proceedings provides that the "applicant is entitled to habeas corpus relief if it is

found that upon the record evidence adduced at the trial no rational trier of fact could have found

proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 324, 99 S.Ct. at  2791-

92.  The federal reviewing court must, " give[] full play to the responsibility of the trier of fact to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

1:06 CV 0596                                    13

basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. at 3l9, 99 S.Ct. at 2789.  Circumstantial evidence, "if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt."*McKenzie v. Smith,* 326 F.3d 721, 727 (6th Cir.2003); *Jackson*, 443 U.S. at 317 n. 9. , 99 S.Ct at 2788.  Thus, "[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review <u>all</u> <u>of</u> <u>the</u> <u>evidence</u> is to be considered in the light most favorable to the prosecution."  *Jackson v. Virginia*, 443 U.S. at 3l9, 99 S.Ct. at 2789 (emphasis in original).  Thus, the test in habeas corpus is "whether after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 3l9, 99 S.Ct. at 2789 (emphasis in original); *Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225, 237 (1992). "Finally, the *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993).


        The state court decision incorporated the findings from *State v. Sailor*, 2004 WL 2340113, 2004 - Ohio - 5207 (Ohio App. 8 Dist.), who had been a co-defendant at trial.  See *Hubbard* at ¶¶1-2.  In *Sailor* the state court decision related:

                {¶1} . . . Defendant [Sailor] was indicted along with co-defendants Cordell
                Hubbard and Nichole Hubbard. For the reasons that follow, we affirm the
                decision of the trial court.

                {¶ 2} At trial, the following facts were established: In the early morning
                hours of November 17, 2002, Clark [Lamar] and Omar [Clark] were involved

in an altercation with the defendants, which ultimately led to the fatal shooting of Omar and the serious injury of Clark.

{¶ 3} Prior to the shooting, Nichole Hubbard was spending the evening with Clark and Omar. Clark, Omar, and Nichole were riding in Nichole's car when Nichole gave Clark $20 so that he could purchase a "wet" **FN1** cigarette with the understanding that he was to pay her back in full. The three of them smoked the wet cigarette. When Nichole took Clark home later that night, she asked for the $20 back. Clark repaid Nichole only $10, arguing that because she had smoked the cigarette with him, she was entitled to only half of the money he borrowed to purchase it. Nichole became enraged and hysterical and telephoned her brother, Cordell, to tell him that she had been "played." She told Cordell that she was on Englewood Road, and then got in her car and left.

**FN1**. A cigarette dipped in a solution containing PCP

[¶4] Shortly after receiving the phone call from Nichole, Cordell and defendant arrived at Englewood Road. Cordell and Clark got into an argument over the $20 allegedly owed to Nichole, and defendant pulled out a handgun and started shooting, killing Omar and injuring Clark.

{¶ 5} Detective James Metzer of the Cleveland Police Department Homicide Division was assigned to the case and spoke with Clark shortly after the shooting to obtain descriptions of the individuals involved. He was told about the argument between Clark and Nichole, the wet cigarette, and her threat to call her brother. Detective Metzler located Nichole and she gave him a statement. She admitted that she had fought with Clark over $20.00 and she had called her brother once, but his voice mail picked up and she did not speak to him. She also told the detective that Clark had pulled a gun on her.

[¶9] On May 19, 2003, a jury trial began and the following testimony was given: The State first called Clark Lamar. On the evening of November 16, 2002, he was in the company of Nichole, Omar, Maria Whitlow, and Ellen Taylor, a.k.a. Puddin, playing cards and drinking beer. He, Omar, and Nichole left Puddin's house and smoked a wet cigarette which had been bought with $20 borrowed from Nichole. When he told her that he was going to repay her only $10, Nichole "flipped" out. She became hysterical and threatened to call her brother because "y'all got me fucked up." Nichole made a phone call and told the person on the line: "How we were trying to play her, and how we were sheisty and scandalous, and we got her fucked up and

she ain't on it, and I heard her tell whoever she was talking to on the phone the name of the street and that was it." At the conclusion of the call, Nichole took the $10 and drove away.

{¶10} Approximately three to four minutes after Nichole made the phone call, a car pulled up and two males jumped out of the car. The passenger, later identified as Cordell, started arguing with him and asking him "what the f --- you say to my sister." Cordell made a phone call and asked the person on the line: "Nichole, what he got on? A blue Nautica jacket?"

{¶11} While he was arguing with Cordell, he noticed that the driver of the car had a gun and was arguing with Omar. Upon seeing the weapon, he turned and ran. As he did so, he heard numerous shots fired, and felt a bullet graze his right buttock.

{¶13} The State then called Ellen Taylor "Puddin." She stated the following: Clark, Omar, and Nichole were at her house on the evening of November 16, 2002, but left to get some drugs. She called Nichole and heard people arguing in the background. Nichole was crying, kept hanging up on her, and told her that "I am going to call you back these Niggas got to be fucked up. These Niggas got to be fucked up." She was concerned for Nichole and kept trying to call her; but, Nichole kept hanging up on her. Nichole told her she was going to call her brother and, a moment later, Nichole told her that she was on the other line with her brother and he was arguing with the boys.

{¶14} Tenitta Johnson lives on Englewood. She called the police in the early morning hours of November 17, 2002, after observing a group of young men arguing about a girl in the street near her house. She got a good look at the men and identified Cordell as one of them.

{¶15} Brandon Gibbs was on Englewood on the night of the shooting and saw Clark and Omar arguing with two men he did not know. He overheard one of the men say to Clark, "you can't talk to my sister like that" and "my

sister said you did. I'm about to call her right now. If she says you did it, you outta here."

{¶16} Kristen Clark of Verizon Wireless and Brett Trimble of Sprint Communications Company both testified that six or seven calls occurred between Cordell and Nichole's cell phones between 11:57 p.m. on November

1:06 CV 0596                                        16

16, 2002 and 12:47 a.m. on November 17, 2002 and that none of the calls went to voice mail.

{¶ 17} Larry Braxton lives on Englewood. He was with Brandon Gibbs on the evening of the shooting and saw a group of young men arguing in the street. He heard one of the men say to Clark, "if he called his sister, his ass was out" and "you are outta here." He began walking toward the crowd but reversed his direction after seeing that one of the men had a gun. He identified the defendant as the person with the gun and identified Cordell as being at the scene.

{¶ 18} Joseph Mayhand lives on Englewood. He saw a group of young men arguing in the street and heard one of the men say to Clark, "I'm gonna call my sister and if she says this is you, then your ass is out." He also saw another man holding a gun.

{¶ 19} Finally, Detective James Metzler of the Cleveland Police Department testified that he was assigned to investigate the murder of Omar. Clark told him that he got into a fight with Nichole over drug money and that she called her brother to "f --- them up." Nichole gave a statement to the police in which she stated she only called her brother once but did not talk to him. His review of the cellular phone records demonstrated that there were actually seven calls between Nichole and Cordell between 11:57 a.m. and 12:46 p.m.

The major offense for which Hubbard stands convicted is complicity for murder.  Complicity is defined as:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

> (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender.  A charge of complicity may be stated in terms of this section, or in terms of the principal offense.

Ohio Rev. Code §2923.03(A) and (F).

The state appellate court cited the first three definitions under Subsection A in its decision. See *Hubbard* at ¶¶ 21-26.  Hubbard challenges the conclusion that the evidence established under subsection A-1 that she solicited or procured Cordell to commit the offenses.  Hubbard is correct, except that the state appellate court erred when it included the first and third definitions of complicity was inaccurate.  The record shows that the jury was instructed only under the aiding and abetting theory of subsection A-2.  (See TR. 1764, ECF 7-38). [5]

Accordingly in reviewing the record for substantial evidence, the federal court should not concern itself with the alternate definitions of complicity and focus on whether the evidence supported a finding that Hubbard did "aid or abet another" in the commission of Omar Clark's murder.  The state appellate court properly relied on *State v. Johnson,* which states in its syllabus, "[t]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the

---

[5] A point brought out later in the case which garnered national recognition due to the notoriety of its participants, *State v. Rohr-George*, 2007 WL 842024, 2007 - Ohio - 1264 (Ohio App. 9 Dist.), appeal not allowed, 114 Ohio St.3d 1508, 872 N.E.2d 950, 2007 - Ohio - 4285 (Table 2007), was that the different definitions of complicity were not interchangeable.  See *Rohr v. George* at ¶11.  This is significant because in *Rohr-George* the defendant had been charged with complicity only under §2923.03(A)(1) to "solicit or procure another to commit the offense" of murder. *Rohr-George*, 2007 WL 841024 ¶¶9-11.  The evidence established that Rohr-George had made a series of telephone calls to her current lover, John Zaffino, followed by Zaffino's act of fatally shooting Rohr-George's former lover, Jeff Zack, while Zaffino rode by in a motorcycle purchased with money from Rohr-George.  In overturning Rohr-George's complicity for murder conviction it was emphasized that the "matter not before us is whether the evidence was sufficient to sustain a conviction of complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), for Rohr-George was not even indicted for that crime." *Id.* at ¶11.  The court criticized counsel for reliance on *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796, 2001 - Ohio - 1336 (2001), a case which analyzed complicity under Subsection A2 for aiding and abetting.

1:06 CV 0596                                     18

evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised or incited the principal in the commission of the crime, and the defendant shared the criminal intent of the principal.  Such intent may be inferred from the circumstances surrounding the crime." *Id.*, 93 Ohio St.3d 240, 754 N.E.2d 796, 797 (syllabus).

Murder as defined under Ohio Revised Code §2903.02(A) prohibits purposely causing the death of another.  "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is a specific intention to engage in conduct of that nature."  Ohio Rev. Code §2901.22(A).

The state decision reasoned:

> {¶ 41} Here, the record demonstrates that defendant was hostile and hysterical with both Lamar and Clark after Lamar refused to repay her $10 for drugs. Defendant called her brother Cordell and told him that "they were trying to play her." (Emphasis supplied). Defendant gave Cordell her location. Defendant subsequently engaged in numerous phone calls with Cordell, knowing he was at the location where Clark and Lamar were, and identified Lamar to Cordell when he asked her what Lamar was wearing. Defendant also engaged in numerous phone calls with "Puddin," who testified that they were on a three-way call, that she could hear men fighting in the background, and that defendant told her that "these niggas got to be f ----- up." (Emphasis supplied).

> {¶ 42} When this evidence is viewed in the light most favorable to the State, the jury could find that defendant, out of anger and a desire for revenge against both Clark and Lamar, started the chain of events that led to the

> kidnapping and shooting of Lamar and the kidnapping and death of Clark by
> first arguing with both of them and then calling and telling Cordell to come
> to the scene because she had been "played" by both of them. The jury could
> also find that defendant escalated the already violent atmosphere by
> identifying Lamar to Cordell, knowing that Cordell had arrived at the scene,
> after she had just hysterically told him that she had been "played." We
> believe that it was foreseeable that defendant's conduct under these
> circumstances would result in Clark and Lamar being seriously injured or
> killed, whether by Cordell or Sailor. Hence, defendant's conduct set in
> motion a sequence of events that led to the kidnapping and felonious assault
> of both Lamar and Clark and the eventual death of Clark.

The decision mingles complicity with the concept of transferred intent in its references to foreseeability. Hubbard argues against transferred intent intending, "it is truly a mystery how the conclusion could ever be reached that the death of Omar Clark (who was not the subject of the Appellant's alleged animus, and who was not the person she supposedly described to her brother as wearing the 'blue Nautica jacket') can be said to have been a foreseeable homicide victim." (Petition Brief at 14).

Hubbard makes a factual challenge pointing to the fact that Ms. Taylor testified that, "Yeah, she told us she told her brother not to go over there because everything was cool, and he went over there anyway." (TR. 684-685). This is a small portion of Ms. Clancy's testimony about a conversation she had with Hubbard the day following the shootings, and it is obviously a self-serving statement by Hubbard to exculpate herself from criminal responsibility. This sole statement considering the witness testimonies supporting the conclusion that Hubbard did encourage Cordell and even identified Clark Lamar, fails to meet Hubbard's burden of rebutting the presumption of

1:06 CV 0596                                 20

correctness given to the state decision's factual findings by clear and convincing evidence as required by 28 U.S.C. §2254(e)(1). See  *Joshua v DeWitt*, 341 F.3d 430, 436 (6th Cir. 2003).


The doctrine of transferred intent is "firmly rooted in Ohio law."  *Bradshaw v. Richey*, 546 U.S. 74, 77, 126 S.Ct. 602, 604, 163 L.Ed.2d 407 (2005), citing *State v. Sowell*, 39 Ohio St.3d 322 (1988) and *Wareham v. State*, 25 Ohio St. 601 (1874).  The crime of murder prohibits cause of the death of "another" and "[t]here [is] no reason to read 'another' (counter-textually) as meaning only 'the actual victim[.]" *Id.*  Accordingly Hubbard's fury directed at Lamar Clark for "playing her," communicated to her brother to "f---- up the niggas," indicated purposeful intent which could transfer to the murder of Omar Clark, the unintended victim.  There was sufficient evidence supporting the claim and the decision was not contrary to or an unreasonable application of clearly established Federal law.


Hubbard also challenges her convictions on both counts of complicity to commit kidnapping involving both Omar Clark and Clark Lamar .  *Hubbard* at ¶¶2,17.  The state appellate court related that kidnapping is defined under Ohio Rev. Code §2905.01 provides:

> No person by force, threat, or deception,. . . by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes . . .

> (2) to facilitate the commission of any felony or flight therafter;

> 3) to terrorize or to inflict serious physical harm on the victim or another.

1:06 CV 0596                                    21

*Hubbard* at ¶¶30-34.

The state appellate court accurately described the definitions of kidnapping that had been utilized in the charge to the jury.  (TR. 1766-1772, ECF 7-38).[6]  Viewed in the light most favorable to the prosecution, there was sufficient evidence to support kidnapping of both Omar Clark and Clark Lamar by restraining them of their liberty for the purpose of facilitating the commission of a felony and/or terrorizing and inflicting serious harm.  Cordell Hubbard and Sailor following the phone call from Nicole Hubbard did engage both Clark Lamar and Omar Clark and thus restrained their liberty.  Lamar had testified that he saw two individuals pull up and exit the car and Sailor carrying a gun (*Hubbard* at ¶7) and he had been engaged by Cordell Hubbard in an argument for what he had said to Hubbard and observed Cordell make a phone call asking "Nicole, what he got on?"  *Sailor* at ¶10.  Thus both Clark Lamar and Omar Clark had been restrained in their movement, threatened and/or terrorized.  The state decision was not "contrary to" or an "unreasonable application" of clearly established Federal law.

*Ground Six:*

> All verdicts which found petitioner guilty are against the manifest weight of
> the evidence and are contrary to law when there were supported by less than
> proof beyond a reasonable doubt.

Hubbard raises a manifest weight of the evidence claim.  Respondent counters that Hubbard's sixth ground on "manifest weight of the evidence," is not cognizable since it asserts a state claim

---

[6] The jury had been instructed with reference to "Clark Williams," but this is the same individual referred to as Clark Lamar in the state decision.  Mr. Williams testified that  his birth name was Clark Lynn Williams but he also went by the names "Dude" and "Lamar" (TR. 386-387, ECF #7-24).

1:06 CV 0596                                          22

rather than a federal claim.  Respondent is correct.  It is well established that federal habeas corpus

relief does not lie for errors of state law.  See *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092,

3102, 111 L.Ed.2d 606 (1990); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-5, 79 L.Ed.2d

29 (1984); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991).

Under state law, a due process claim of sufficiency of the evidence is distinguishable from a  claim

that the verdict is not supported by the manifest weight of the evidence. See *State v. Elmore* 111 Ohio

St.3d 515, 522, 857 N.E.2d 547, 558- 59, 2006-Ohio 6207 (2006).[7]  Manifest weight of the evidence

is not based on due process concerns as is sufficiency of the evidence, but  is a "separate and distinct

test." *Id.*    Consequently,  manifest  weight  of  the  evidence  claims  do  not  address  a  federal

constitutional claim. See *Bryant v. Hudson*, 2006 WL 2849769 *3  (N.D. Ohio);   *Walker v.

Timmerman-Cooper*, 2006 WL 3242101 *6 (S.D. Ohio Oct. 5, 2006); and see *Tibbs v. Florida*, 457

---

[7]The Ohio Supreme Court distinguishes these concepts as follows:

 In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the
evidence in a light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio
St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443
U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

A claim that a jury verdict is against the manifest weight of the evidence involves a separate and
distinct test. " ' The court, reviewing the entire record, weighs the evidence and all reasonable
inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the
evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the
conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial
should be exercised only in the exceptional case in which the evidence weighs heavily against the
conviction.' " *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v.
Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

*State v. Elmore,* 111 Ohio St.3d at 522.

1:06 CV 0596                                         23

U.S. 31, 44-45, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).[8]  Accordingly, Hubbard's sixth ground does

not present a reviewable constitutional matter, but a non-reviewable matter of state law.


        This stands despite the fact that as presented before Ohio's Supreme Court, Hubbard did refer

to sufficiency of the evidence in her argument. While the  mainstream of constitutional law argument

may serve to correct a presentation error in state court, it does not serve to correct oversight in

neglecting to raise this  same sufficiency of the evidence argument in the federal application.


                        ***CONCLUSION AND RECOMMENDATION***

        Following review of the petition and applicable law, Nichole Hubbard has not demonstrated

that she is in custody pursuant to a judgment of the state court which resulted in a decision that was

contrary to or involved an unreasonable application of Federal law as determined by the Supreme

Court of the United States or was the result of a decision based on an unreasonable interpretation of

the facts in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).

Hubbard has not demonstrated any error resulting in denial of fundamental fairness or cause to

_____

        [8] *Tibbs*, which is often cited in opposition to manifest weight of the evidence arguments distinguished the
manifest weight argument from the due-process based sufficiency of the evidence argument, explaining:

        First, trial and appellate judges, distinguish between the weight and the sufficiency of the evidence.
        . .  Second, a decision in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979),
        places some restraints on the power of the appellate courts to mask reversals based on legally
        insufficient evidence as reversals grounded on the weight of the evidence.  We held in *Jackson* that
        the due process clause prevents any conviction based on evidence insufficient to persuade a rational
        factfinder of guilt beyond a reasonable doubt.  The Due Process Clause, in other words, sets a lower
        limit on an appellate court's definition of evidentiary sufficiency." (footnotes omitted).

*Id.*, 457 U.S. at 44-45.

1:06 CV 0596                                    24

hesitate due to the probability of actual innocence.  There has been no demonstrated need for an

evidentiary hearing.  It is recommended that Hubbard's application for habeas corpus be denied.


                                              _____ s/James S. Gallas_____

                                                 United States Magistrate Judge


        *ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court

within ten (10) days of mailing of this notice.  Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*,

638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


December 4, 2007